**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 14, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WARREN D. NICODEMUS, Trustee
of the Warren D. Nicodemus Living
Trust dated August 5, 1999 and JOHN
N. MORRIS, NORMA B. MORRIS,
and JOHN H. BELL IRON
MOUNTAIN RANCH COMPANY, on
behalf of themselves and all others
similarly situated,

       Plaintiffs - Appellees,

    v.

UNION PACIFIC CORPORATION, a
Utah corporation, and UNION
PACIFIC RAILROAD COMPANY, a
Delaware corporation,

       Defendants - Appellants,

and

SPRINT COMMUNICATIONS
COMPANY, L.P.; QWEST
COMMUNICATIONS
CORPORATION; LEVEL 3
COMMUNICATIONS LLC; WILTEL
COMMUNICATIONS, LLC; RAILS
TO TRAILS CONSERVANCY,

       Amici Curiae.

Nos. 02-8016, 02-8017

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING
## (D. Ct. Nos. 01-CV-009-J & 01-CV-099-J)

Submitted on the briefs:*

Joseph Rebein, Shook, Hardy & Bacon, L.L.P., Kansas City, Missouri; Ron Bodinson, Jason E. Pepe, Bill J. Hays, and Chelsi K. Hayden, Shook, Hardy & Bacon, L.L.P., Overland Park, Kansas; and Stephen R. McAllister, University of Kansas School of Law, Lawrence, Kansas, for Defendants-Appellants.

John B. Massopust, Zelle, Hofmann, Voelbel, Mason & Gette, LLP, Minneapolis, Minnesota; Catherine M. Colinvaux, Zelle, Hofmann, Voelbel, Mason & Gette, LLP, Waltham, Massachusetts; Kim D. Cannon, Davis & Cannon, Sheridan, Wyoming; and Jordan Lewis, Siegel, Brill, Greupner, Duffy & Foster, Milwaukee, Wisconsin, for Plaintiffs-Appellees.

J. Emmett Logan, Stinson Morrison Hecker LLP, Kansas City, Missouri, John F. Daum, O'Melveny & Myers, LLP, Los Angeles, California, Joseph E. Jones, Fraser Stryker Vaughn Meusey Olson Boyer & Bloch, Omaha, Nebraska, and J. Kevin Hayes, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, Oklahoma, filed and Amici Curiae brief for Sprint, Qwest, Level 3, and Wiltel, on behalf of Appellants.

Andrea Ferster, Rails to Trails Conservancy, Washington, D.C., and Charles H. Montange, Seattle, Washington, filed an Amicus Curiae brief for Rails to Trails Conservancy, on behalf of Appellee.

Before **TACHA**, Chief Circuit Judge, **ANDERSON**, and **EBEL**, Circuit Judges.

---

*After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

-2-

**TACHA**, Chief Circuit Judge.

---

This case has led a somewhat tortured existence in the federal courts. The Plaintiffs-Appellees, who are Wyoming landowners, originally filed suit in the District of Wyoming in 2001 alleging various state law claims including trespass, unjust enrichment, and slander of title against Defendants-Appellants Union Pacific Corporation and Union Pacific Railroad Company ("Union Pacific"). On December 6, 2001, the District Court sua sponte dismissed Plaintiffs' causes of action for lack of subject matter jurisdiction under either 28 U.S.C. §§ 1331 or 1332. Despite the fact that it ostensibly prevailed, Union Pacific filed a motion under Fed. R. Civ. P. 59(e) requesting the District Court to alter or amend its ruling that it lacked subject matter jurisdiction under § 1331. The District Court denied the motion.

Union Pacific then appealed the ruling to this Court. This panel affirmed, concluding that federal-question jurisdiction over state law claims existed only when Congress provided a federal cause of action or intended to provide a federal forum for resolution of the dispute. *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1238 (10th Cir. 2003) ("*Nicodemus I*") (citing *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 (1986)). Union Pacific sought rehearing en banc, which was granted on April 22, 2003.

Before the en banc argument took place, however, the parties filed a joint motion asking that the appellate proceedings be abated pending the outcome of class action settlement proceedings in the Seventh Circuit that might moot the issues on appeal. On August 19, 2003, this Court granted the motion. Two years later, in 2005, the Seventh Circuit vacated the nationwide class certification, *see Smith v. Sprint Commc'ns Co.*, 387 F.3d 612 (7th Cir. 2004), *cert. denied,* 125 S. Ct. 2939 (2005), and thus the settlement proceedings that could have mooted the rehearing en banc fell through. The parties then advised this Court that they were ready to proceed with the previously scheduled rehearing.

In the interim, the Supreme Court issued its decisions in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363 (2005) and *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 125 S. Ct. 2611 (2005), which addressed the important jurisdictional questions at issue in this case. In response to these cases, Plaintiffs filed a motion requesting this Court to reconsider its decision to rehear the case en banc. Plaintiffs asked this Court to reinstate the panel's opinion on federal-question jurisdiction, but to remand to the District Court on the basis that diversity jurisdiction existed.[1] Union Pacific opposed the motion.

_____

[1]We note that though both parties now agree that the District Court had jurisdiction—Plaintiffs suggest diversity jurisdiction is proper while Union Pacific suggests federal-question jurisdiction is proper—we must nevertheless find jurisdiction as it "cannot be conferred upon a federal court by consent,

(continued...)

-4-

We vacated our decision to rehear the case en banc and referred the case back to the original panel to consider the effect of *Grable & Sons* and *Exxon Mobil* on the outcome of the proceedings. We take jurisdiction under 12 U.S.C. § 1291[2] and, in light of *Grable & Sons*,[3] we now REVERSE.

## I. BACKGROUND

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case arises under federal law if its 'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief

---

[1](...continued)
inaction or stipulation." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

[2]We reinstate that portion of our prior opinion determining our appellate jurisdiction over the District Court's order dismissing the case in Union Pacific's favor. *See Nicodemus I*, 318 F.3d at 1234–1235.

[3]Plaintiffs argue that the Supreme Court's recent decision in *Exxon Mobil* permits the District Court to exercise diversity jurisdiction over the dispute. The District Court concluded, however, that Plaintiffs did not meet the amount-in-controversy requirement for diversity jurisdiction, and neither Plaintiffs nor Union Pacific appealed that ruling. We therefore deem the issue waived. *See Tulengkey v. Gonzales*, 425 F.3d 1277, 1279 n.1 (10th Cir. 2005). In any event, it is not clear that *Exxon Mobil* would have any effect on Plaintiffs' claim. In *Exxon Mobil* the Court held that "where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement," a federal court may exercise supplemental jurisdiction over the claims of other plaintiffs. 125 S. Ct. at 2615. Here, the District Court concluded that *no* plaintiff could meet the amount-in-controversy requirement. *See Nicodemus v. Union Pac. Corp.*, 204 F.R.D. 479, 488 n.7 (D. Wyo. 2001).

necessarily depends on resolution of a substantial question of federal law.'"

*Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (quoting

*Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28

(1983). Thus, even though a plaintiff asserts only claims under state law, federal-

question jurisdiction may be appropriate if the state-law claims implicate

significant federal issues.

Over the last century, several principles have developed that guide federal

courts in determining whether they have jurisdiction over a state-law claim. First,

the well-pleaded complaint rule requires that "the federal question giving rise to

jurisdiction must appear on the face of the complaint."[4] *Karnes v. Boeing Co.*,

335 F.3d 1189, 1192 (10th Cir. 2003). This rule "makes the plaintiff the master

of the claim; he or she may avoid federal jurisdiction by exclusive reliance on

state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

The well-pleaded complaint rule also means that federal-question

jurisdiction may not be predicated on a defense that raises federal issues. *Merrell*

*Dow*, 478 U.S. at 808. Therefore, a "plaintiff's anticipation of a defense based on

---

[4]There is one exception to the well-pleaded complaint rule: complete preemption. In *Metropolitan Life Ins. Co. v. Taylor*, the Supreme Court recognized that "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." 481 U.S. 58, 63-64 (1987). This exception is not implicated in this case.

federal law is not enough to make the case 'arise under' federal law[;] [n]or is a defendant's assertion of a defense based on federal law . . . a proper basis for removal." *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996). Further, a plaintiff may not circumvent federal jurisdiction by omitting federal issues that are essential to his or her claim. *See id.* at 1345 n.2.

Even if a federal question appears on the face of a well-pleaded complaint, federal jurisdiction is not automatic. It is by now axiomatic that "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons*, 125 S. Ct. at 2367. Finally,

> even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.

*Id.*

In *Merrell Dow*, the Court was confronted with a typical negligence action in which the plaintiffs alleged that the defendant drug manufacturer's violation of a Food Drug and Cosmetic Act ("FDCA") labeling provision raised a rebuttable presumption of negligence. 478 U.S. at 805–06. Since Congress did not include a private remedy for misbranding violations under that provision of the FDCA, the Court concluded that Congress implied that "the presence of a claimed

violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Id.* at 814.

After the Court's decision in *Merrell Dow*, the circuits were divided over the precise effect the case had on federal jurisdiction over state-law claims. Several circuits, including this one, required a finding of a federal cause of action to support the assertion of federal-question jurisdiction over state-law claims. *See, e.g., Nicodemus I*, 318 F.3d at 1238; *Zubi v. AT&T Corp.*, 219 F.3d 220, 223 n.5 (3d Cir. 2000); *Seinfeld v. Austen*, 39 F.3d 761, 764 (7th Cir. 1994). These courts relied on broad language in *Merrell Dow* suggesting that "[i]n the absence of a federal private right of action 'it would flout congressional intent to provide a private federal remedy for the violation of the federal statute . . . [and] it would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction.'" *Nicodemus I*, 318 F.3d at 1237 (quoting *Merrell Dow*, 478 U.S. at 812) (alterations in original). In *Grable & Sons*, the Court granted certiorari to address this jurisdictional question. 125 S. Ct. at 2366.

The Court clarified that *Merrell Dow* cannot be read "as overturning decades of precedent . . . and converting a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Id.* at 2369–70 (footnote omitted). Rather, the absence of a private right of action is

"relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Id.* at 2370. It further explained that in *Merrell Dow*, the absence of a federal private right of action was fatal because "exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues." *Id.* In this way, *Merrell Dow* is consistent with the Court's prior holdings because it was based in part on a determination of "Congress's intended division of labor between state and federal courts."[5] *Id.* at 2371. The Court then reaffirmed its prior holdings, stating that the question is whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 2368.

With this framework in mind, we turn to the facts of this case.

## II. DISCUSSION

A.    Facts

Plaintiffs in this case are Wyoming landowners. Union Pacific was granted

---

[5]The Court acknowledged that *Merrell Dow* characterized the absence of a private right of action as a consideration in the assessment of substantiality, *see Grable & Sons*, 125 S. Ct. at 2370, but it explained that the "primary importance" of this factor as an ingredient in the delicate determination of "Congress's conception of the scope of [federal-question] jurisdiction," was that allowing jurisdiction when Congress had not intended a private right of action would have seriously disrupted the balance of labor between state and federal courts, *see id.*

railroad rights-of-way over Plaintiffs' property under numerous federal land-grant statutes, which dated from 1852 to 1875. The dispute between the parties arose when Union Pacific entered into agreements with various telecommunications providers in which Union Pacific "licensed" to them the right to install and maintain fiber-optic cables in the rights-of-way over Plaintiffs' land. Union Pacific receives revenue from these license agreements.

Plaintiffs filed suit in the District of Wyoming, alleging Union Pacific's actions exceeded the scope of Union Pacific's rights under the federal land-grant statute. They claimed that though Union Pacific has an undisputed right to conduct railroad operations along the right of way, Plaintiffs retain the servient tenement in the underlying land for all other purposes. Mr. Nicodemus, as trustee for property owned by the Warren D. Nicodemus Living Trust, sought various forms of relief, including: (1) damages for trespass; (2) damages for unjust enrichment; (3) an accounting and disgorgement of rents and profits; (4) a permanent injunction preventing Union Pacific from further conveying any claimed interest in the land; and (5) a declaratory judgment establishing, *inter alia*, that Union Pacific's interest in the land is limited to that use necessary for the operation of a railroad. The Morris plaintiffs, including John H. Bell Iron Mountain Ranch Company, advanced similar claims, and in addition, requested the following: (1) damages for slander of title; (2) damages for inverse

condemnation; and (3) an injunction requiring Union Pacific to remove the existing fiber optic cables.

## B.    Federal-Question Jurisdiction

Our starting point is to determine whether the well-pleaded complaint raises a disputed issue of federal law, the resolution of which is necessary to grant the relief Plaintiffs seek.[6]  Plaintiffs' claims are founded in state law, but, as discussed above, a plaintiff may not circumvent federal jurisdiction by omitting federal issues that are essential to his or her claim.  *See Schmeling*, 97 F.3d at 1345 n.2.  All of Plaintiffs' claims hinge on whether Union Pacific's use of the right-of-way has exceeded the purpose for which it was granted.[7]  *Cf. Markstein v. Countryside I, LLC*, 77 P.3d 389, 398 (Wyo. 2003) ("An easement is defined as 'an interest in land which entitles the easement holder to a limited use or enjoyment over another person's property.'" (quoting Restatement of Property § 450(a) (1944)).  To construe the scope of a right-of-way easement, a court must

---

[6]In *Nicodemus I*, we assumed without deciding that Plaintiffs' claims satisfied the well-pleaded complaint rule, *see* 318 F.3d at 1236, but acknowledged that for "at least some of plaintiffs' claims, we might need to consider Union Pacific's rights as part of plaintiffs' prime facie case, to determine the extent to which Union Pacific's right-of-way circumscribe plaintiffs' fee interests," *id.* at 1236 n.5.

[7]We note that we have previously construed Union Pacific's rights under section 2 of the Pacific Railroad Act of 1862, involving Mr. Nicodemus's land, as "the grant of the right-of- way, and . . . [not a] convey[ance] [of] title to the servient estate underlying the right-of-way." *Energy Transp. Sys., Inc. v. Union Pac. R.R. Co.*, 606 F.2d 934, 937 (10th Cir. 1979).

look to the language of the easement to determine the intent of the parties. *Id.*; *see also Edgcomb v. Lower Valley Power and Light, Inc.*, 922 P.2d 850, 854 (Wyo. 1996) (stating that when an easement is obtained pursuant to a grant, the extent of the right depends upon the language of the grant). Thus, the first step in resolving the claims against Union Pacific requires a court to look at the vehicle by which Union Pacific obtained the right-of-way—in this case, the federal-land grant statutes.

Plaintiffs argue, however, that the federal issue only arises as a defense to their claims and thus it is an inappropriate basis on which to assume federal-question jurisdiction. On the contrary, to prove their action for unjust enrichment, for example, Plaintiffs must show not only that Union Pacific was enriched, but that "the underlying circumstances, as between the two parties, . . . [is] such that the enrichment is unjust." *Landeis v. Nelson*, 808 P.2d 216, 218 (Wyo. 1991). Plaintiffs' specific allegations of unjust enrichment are derived not from the alleged trespass, but from misuse of the right-of-way. The Morrises' complaint states that Union Pacific was unjustly enriched by its "unlawful use and occupancy of . . . plaintiffs' . . . land and the retention of rents and other compensation arising from the unlawful use and occupancy of the right-of-way." Appx. 66. The Nicodemuses allege that "under the laws of the United States" the right-of-way is for railroad purposes and Union Pacific "has no ownership or

possessory interest in or right to exercise dominion and control over these rights of way beyond that which is necessary for the operation of a railroad." Appx. 42. The complaint further alleges that Union Pacific has "[w]rongfully claim[ed] an ownership or possessory interest . . . beyond that which is necessary for the limited purpose of operating a railroad over the lands on which [it] currently . . . has a right-of-way . . . ." Appx. 43. Finally it states that by licensing to telecommunications companies the right to bury fiber optic cables, it has "unlawful[ly] use[d] and occup[ied] their land," depriving them of the "rents [and] profits." To prove that Union Pacific acted unlawfully, Plaintiffs must establish that the right-of-way prohibited the use to which it was put. The federal issue, therefore, arises in Plaintiffs' case-in-chief, not by way of defense.[8]  *See Drawhorn v. Qwest Commc'ns Int'l, Inc.,* 121 F. Supp. 2d 554, 564 (E.D. Tex.

---

[8]If any one claim within Plaintiffs' complaint supports federal question jurisdiction, a federal court may assert jurisdiction over all the claims, including any alleged state-law claims, arising from the same core of operative facts. *See* 28 U.S.C. § 1367; *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164 (1997). We also note, however, that the Morris plaintiffs' slander of title claim necessarily raises a disputed federal issue. In Wyoming, slander of title is defined as "a false and malicious statement made in disparagement of a person's title to real or personal property, or of some right of his causing him special damage." *Sannerud v. Brantz,* 879 P.2d 341, 344 (Wyo. 1994). To prove that Union Pacific's asserted right to the property is false the Morrises will have to prove that it has exceeded the scope of the right-of-way. *See, e.g., Hopkins v. Walker*, 244 U.S. 486, 490 (1917) (action to remove cloud on title raises federal issue because "invalidity of the instrument or record sought to be eliminated as a cloud upon the title are essential parts of the plaintiff's cause of action").

2000) (plaintiffs must prove as part of case-in-chief that the railroads had no right to grant easements to telecommunications company to lay fiber optic cables on property); *Browning v. MCI WorldCom Network Servs.*, 2002 WL 500584 (D. Kan. 2002) (unpublished) (same); *In re AT&T Fiber Optic Cable Installation Litigation*, 2001 WL 1397295 (S.D. Ind. 2001) (unpublished) (same); *see also Grable &Sons*, 125 S. Ct. 2363 (quiet title action required plaintiff to prove that he was not given proper notice of seizure under federal statute); *Kan. Pac. Ry. Co. v. Atchison, Topeka & Santa Fe R.R. Co.*, 112 U.S. 414 (1884) (quiet title action depends on construction given to federal land grant statutes); *Municipality of San Juan v. Corporacion Para El Fomento Economico De La Ciudad Capital*, 415 F.3d 145 (1st Cir. 2005) (taking jurisdiction over breach of contract action when breach depended on construction of federal law).

The presence of a federal issue, however, is not necessarily "a password opening federal courts to any state action embracing a point of federal law." *Grable & Sons*, 125 S. Ct. at 2368. Instead, we next ask whether the federal issue is one that is "actually disputed and substantial, [and] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* As an initial matter, it is clear that the federal question is actually disputed. In fact, construction of the federal land grant appears to be the only legal or factual issue contested in the case. Next, in

-14-

determining whether the federal question is a substantial one, courts should inquire into whether resolution of the issue in federal court would benefit from "the advantages thought to be inherent in a federal forum." *Id.* at 2367. A case should be dismissed for want of a substantial federal question only when the federal issue is "(1) wholly insubstantial or obviously frivolous, (2) foreclosed by prior cases which have settled the issue one way or another, or (3) so patently without merit as to require no meaningful consideration." *Wiley v. Nat'l Collegiate Athletic Ass'n*, 612 F.2d 473, 477 (10th Cir. 1979) (citing *Hagans v. Lavine*, 415 U.S. 528, 539–41 (1974)).

Union Pacific argues that there is a substantial federal interest in the railroad rights-of-way held by Union Pacific. In support of this contention, it notes the following: (1) the federal government's subsidization of the construction of a transcontinental railroad through the rights-of-way grants; (2) the federal government's limited right of reverter in the railroad rights-of-way, *see* 16 U.S.C. § 1248(c);[9] and (3) the applicability of federal common law in

___

[9]Under the Abandoned Railroad Right of Way Act, 43 U.S.C. § 912, enacted in 1922, land given by the United States for use as a railroad right-of-way in which the United States retained a right of reverter under *N. Pac. Ry. Co. v. Townsend*, 190 U.S. 267 (1903), must be turned into a public highway within one year of the railroad company's abandonment or be given to adjacent landowners. Subsequently, Congress enacted the National Trails System Improvement Act of 1988, 16 U.S.C. § 1248(c), under which those lands not converted to public highways within one year of abandonment revert back to the United States, not

(continued...)

construing the federal land-grant statutes, *see N. Pac. Ry. Co. v. Townsend*, 190

U.S. 267, 270–71 (1903) ("'The courts of the United States will construe the

grants of the general government without reference to the rules of construction

adopted by the states for their grants. . . .'").

We agree that the contested interpretation of the federal land-grant statutes

as between these parties involves a substantial federal issue. Indeed, we

acknowledged that these were "considerable federal interests" in *Nicodemus I.*

318 F.3d at 1237. The statutes at issue granted to Union Pacific the right to

construct a railroad and telegraph line in order to "secure the safe and speedy

transportation of the mails, troops, munitions of war, and the public stores" to the

West. *See, e.g.*, Act of July 1, 1862, ch. 120, § 3, 12 Stat. 489. Under

subsequently enacted statutes, the United States has a reversionary interest in the

lands when no longer used for their designated purposes. *See* 43 U.S.C. §§ 912,

913 and 16 U.S.C. § 1248(c). Thus, the government has a direct interest in the

determination of property rights granted to the railroad. *See Grable & Sons*, 125

S. Ct. at 2368 (federal issue is substantial because "[t]he Government . . . has a

direct interest in the availability of a federal forum to vindicate its own

administrative action, and [because] buyers (as well as tax delinquents) may find

---

[9](...continued)
adjacent private landowners. For a general overview of this statutory scheme, see
*Mauler v. Bayfield County*, 309 F.3d 997, 999 (7th Cir. 2002).

it valuable to come before judges used to federal tax matters"). Moreover, federal common law applies to resolve the dispute. Though the existence of a federal cause of action would have provided additional evidence relevant to our calculus, *see id.* at 2370, it is not dispositive, especially since Congress did not grant to federal courts original jurisdiction over federal-question cases until 1875, *see* Judiciary Act of 1875, §§ 1, 2, 18 Stat. 470.

Finally, we are confident that providing a federal forum for the resolution of this issue will not disrupt "the sound division of labor between state and federal courts." We acknowledge that the type of property dispute at issue has been the recent subject of several proposed class actions. *See, e.g., Smith*, 387 F.3d 612; *Isaacs v. Sprint Corp.*, 261 F.3d 679 (7th Cir. 2001). It will nonetheless be the rare state trespass and unjust enrichment case that so uniquely turns on a critical matter of federal law. Thus, federal jurisdiction to resolve genuine disagreement over the scope of a right granted to the railroads pursuant to federal law "will portend only a microscopic effect on the federal-state division of labor." *Grable & Sons*, 125 S. Ct. at 2368.

In sum, "[g]iven the absence of threatening structural consequences" and the importance for the availability for a federal forum, "there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of [this] state-law . . . claim." *Id.* at 2371.

## III. CONCLUSION

For the foregoing reasons, the judgment of the District Court dismissing the action for lack of subject matter jurisdiction is **REVERSED**.