# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2779

_____

Joel Baker; Kathy Baker; Margaret L. Barnett; Matthew Wagner; Victoria Wagner; Todd Durbin; Stephanie Durbin; Kendra Sallam; Evelyn Tombleson; Glen Tombleson; Timothy Gust; Kiersten Gust; Diana Anderson; Cheri Williams; Laura Decourcy; Richard Decourcy; Phillip Cooper; Marilyn Cooper

*Plaintiffs - Appellants*

v.

Martin Marietta Materials, Inc.; Hunt Martin Materials, LLC; Material Transport Company; Hanrahan Asphalt Paving Co., Inc.; Vance Brothers, Inc.; Patrick L. Dusselier Foundation Company, Inc.; Superior Bowen Asphalt Company, L.L.C.; Tom Peace Trucking, Co.; Bill Cassidy Trucking, Inc.; Lone Wolf Enterprises, Inc.; Bluestem Trucking, Inc.; George J. Shaw Construction, Co.; Pavlich, Inc.; O'Neil Trucking; Greg Bordner Construction Co., Inc.; Miles Excavating, Inc.; Acker Trucking; Show-Me Trucking & Freight, Inc.; Pavestone Company, LLC; Heller's Trucking; Roadhog Trucking, LLC; Geiger Trucking Company

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 24, 2013
Filed: March 20, 2014

_____

Before WOLLMAN, BEAM, and SMITH, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Eighteen citizens (the citizens) of Greenwood, Missouri (the City), sued Martin Marietta Materials, Inc., Hunt Martin Materials, LLC, and several trucking companies (collectively, "the quarry defendants") in Missouri state court, asserting various state-law tort claims. The quarry defendants removed the case to federal district court, whereupon the district court issued an injunction prohibiting the citizens from pursuing their claims in any forum. The citizens appeal the district court's denial of their motion to remand to state court and its issuance of the injunction. We reverse and remand.

## I. Background

## A. Prior Litigation

Martin Marietta Materials, Inc. (MMM), and Hunt Martin Materials, LLC (HMM), own and operate a quarry outside the City. Second Avenue runs through residential areas of the City and provides access to the quarry. In 1991, the City and MMM entered into a contract that allowed trucking companies to use the Second Avenue route when traveling to and from the quarry. Use of the route continued without incident until 2006, when, in an attempt to reduce truck traffic, the City passed an ordinance that imposed weight restrictions on trucks using Second Avenue. In response, MMM and HMM filed suit against the City in federal district court. The ordinance was later invalidated.

The City subsequently passed a new ordinance (the Ordinance) that prohibited commercial vehicles from using the City's streets unless the street was a designated "Commercial Use Route." In effect, the Ordinance prevented trucks from using Second Avenue to gain access to the quarry. MMM and HMM challenged the Ordinance in federal district court.

In September 2008, the district court issued an injunction that permanently enjoined the City from enforcing the Ordinance (the 2008 Permanent Injunction). The district court determined that the Ordinance "impose[d] a burden on interstate commerce that [wa]s clearly excessive in relation to the purported local benefits[,]" and thus concluded that the Ordinance violated the dormant Commerce Clause. Martin Marietta Materials, Inc. v. City of Greenwood, No. 06-697-CV-W-W, 2008 WL 4832638, at *7 (W.D. Mo. Sept. 4, 2008). Further, the district court ordered:

> [U]nder the Commerce Clause, the City of Greenwood is enjoined from taking any action that has the effect of prohibiting all through truck traffic through the City. Based on the facts of this case, that means that truck traffic must be able to make use of either the existing Second Avenue Route or a route utilizing Allendale Lake Road to travel to and from Highway 150 through the City . . . .

Id. at *8. Following the issuance of the 2008 Permanent Injunction, the City, MMM, and HMM entered into a settlement agreement in which the City designated Second Avenue as the route to be used for quarry traffic.[1]

## B.  Current Litigation

The citizens, who reside on Second Avenue, filed suit against the quarry defendants in state court in 2011, asserting state-law tort claims for private nuisance, intentional infliction of emotional distress, and negligence per se. The citizens sought

---

[1]Because the background information related to the state and federal litigation between the City, MMM, and HMM regarding Second Avenue is lengthy and complex, we include only the information relevant to this appeal. Additional factual material can be found in Martin Marietta Materials, Inc. v. City of Greenwood, No. 06-697-CV-W-W, 2008 WL 4832638 (W.D. Mo. Sept. 4, 2008), and City of Greenwood v. Martin Marietta Materials, Inc., 299 S.W.3d 606 (Mo. Ct. App. 2009).

actual, compensatory, and punitive damages. They did not seek declaratory or injunctive relief.

The quarry defendants removed the case to federal district court. In response, the citizens moved to remand the case to state court, asserting that the district court lacked jurisdiction over the case. The district court acknowledged that the citizens' claims were brought under state law and that the parties were not diverse, but denied the citizens' motion to remand, concluding that it had jurisdiction because the citizens' claims "raise[d] important federal questions, including whether [the quarry defendants'] use of Second Avenue remain[ed] protected by the dormant Commerce Clause." D. Ct. Order of Dec. 16, 2011, at 11. Further, the district court concluded that it had ancillary jurisdiction to protect and enforce the 2008 Permanent Injunction. In response to the quarry defendants' motion, the district court later issued an injunction pursuant to the All Writs Act, 28 U.S.C. § 1651(a), prohibiting the citizens from pursuing their claims in any forum.

## II. Motion to Remand

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there." In re Prempro Prods. Liab. Litig., 591 F.3d 613, 619 (8th Cir. 2010); see also 28 U.S.C. § 1441. "[T]he party seeking removal has the burden to establish federal subject matter jurisdiction, [and] all doubts about federal jurisdiction must be resolved in favor of remand." Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009) (internal citations omitted). "We review the district court's exercise of removal jurisdiction and its denial of a motion to remand *de novo*." Id. at 911-12.

The quarry defendants argue that removal was proper because the district court had both federal-question jurisdiction and ancillary jurisdiction over the case. We address each of these arguments in turn.

## A. Federal-Question Jurisdiction

"Removal based on federal question jurisdiction is governed by the well pleaded complaint rule: jurisdiction is established only if a federal question is presented on the face of the plaintiff's properly pleaded complaint." Pet Quarters, Inc. v. Depository Trust & Clearing Corp., 559 F.3d 772, 779 (8th Cir. 2009). Accordingly, a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." Cent. Iowa Power, 561 F.3d at 912 (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)). Defendants may not "inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law." Gore v. Trans World Airlines, 210 F.3d 944, 948 (8th Cir. 2000). Moreover, "[i]t is firmly established that a federal defense, including a preemption defense, does not provide a basis for removal, 'even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue in the case.'" Cent. Iowa Power, 561 F.3d at 912 (quoting Caterpillar, 482 U.S. at 393).

The United States Supreme Court has recognized, however, that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). "There is no 'single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties.'" Cent. Iowa Power, 561 F.3d at 912 (quoting Grable & Sons, 545 U.S. at 314). "Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons, 545 U.S. at 314.

The quarry defendants argue that removal was proper because the citizens' state-law claims implicate substantial federal issues regarding the quarry defendants'

constitutional rights under the dormant Commerce Clause and the 2008 Permanent Injunction. They contend that the district court's determination that the Ordinance violated the dormant Commerce Clause and its issuance of the 2008 Permanent Injunction established that they have a constitutional right to use Second Avenue. The quarry defendants further contend that the citizens must prove that the conduct of the quarry defendants was unreasonable in order to succeed on each state-law claim and that such a determination hinges on whether the quarry defendants' conduct exceeded the scope of their constitutional right. Accordingly, they argue that substantial federal issues are present in the citizens' case-in-chief, making federal-question jurisdiction proper.

In support of their argument, the quarry defendants rely on Nicodemus v. Union Pacific Corp., 440 F.3d 1227 (10th Cir. 2006). In Nicodemus, federal land-grant statutes gave a railroad company rights-of-way over several landowners' properties. Id. at 1233. After the railroad company licensed to various telecommunications providers the right to install cables in the rights-of-way, the landowners filed suit in federal court. Id. at 1233-34. The landowners alleged various state law claims based on their assertion that the railroad company exceeded the scope of its rights under the land-grant statutes by allowing the telecommunications providers to install cables in the rights-of-way. Id. at 1234. The district court dismissed the case for lack of jurisdiction. Id. at 1230. On appeal, the Tenth Circuit reversed, concluding that "[a]ll of [the landowners'] claims hinge on whether [the railroad company's] use of the right-of-way has exceeded the purpose for which it was granted[,]" and that the court would be required to first "look at the vehicle by which [the railroad company] obtained the right-of-way—in this case, the federal-land grant statutes." Id. at 1234. Because federal issues thus arose in the landowners' case-in-chief, federal jurisdiction was found to exist. Id. at 1234-37.

Nicodemus is distinguishable, however, for it involved federal statutes that conferred actual rights on the railroad company, whereas the present case involves a

-6-

district court's order that enjoined a municipality from taking certain action. In comparing this case to Nicodemus, the quarry defendants make several incorrect assertions regarding the effect of the 2008 Permanent Injunction and the application of the dormant Commerce Clause.

First, the quarry defendants assert the 2008 Permanent Injunction established that they had a constitutional right to use Second Avenue and that their use of Second Avenue was reasonable. The issue presented to the district court in 2008, however, was limited to whether the Ordinance was valid. The district court determined that the Ordinance violated the dormant Commerce Clause because it imposed a burden on interstate commerce that was excessive in comparison to the putative local benefits, and thus it enjoined the City from enforcing the Ordinance or any other ordinance "prohibiting all through truck traffic through the City." Nevertheless, the district court acknowledged that the City retained the authority to pass other, less-restrictive ordinances to address its concerns regarding the quarry defendants' use of Second Avenue. See City of Greenwood, 2008 WL 4832638, at *7 ("[I]t is clear that any local interests could be promoted with a lesser impact on interstate activities."). The 2008 Permanent Injunction was thus limited to prohibiting the City from completely barring the quarry defendants' use of Second Avenue. It did not confer upon the quarry defendants an unrestricted constitutional right to use Second Avenue, nor did it establish that their use of Second Avenue was reasonable.

Next, the quarry defendants assert that the citizens' claims violate the dormant Commerce Clause and, in effect, the 2008 Permanent Injunction, because truck travel on Second Avenue would be burdened if the citizens recovered on their claims. The dormant Commerce Clause, however, "prohibits states [and municipalities] from enacting laws that 'discriminate against or unduly burden interstate commerce.'" Jones v. Gale, 470 F.3d 1261, 1267 (8th Cir. 2006) (quoting S.D. Farm Bureau, Inc. v. Hazeltine, 340 F.3d 583, 592 (8th Cir. 2003)); see also U & I Sanitation v. City of Columbus, 205 F.3d 1063 (8th Cir. 2000) (considering whether a municipal ordinance

violated the dormant Commerce Clause). The quarry defendants cite no case in which the dormant Commerce Clause precluded private citizens from bringing state-law tort claims. Furthermore, the 2008 Permanent Injunction enjoins the City from enforcing the Ordinance or passing similar ordinances; it does not prevent the citizens from pursuing their state-law claims. Because the quarry defendants' arguments in support of federal-question jurisdiction are premised on incorrect assertions about the effect of the 2008 Permanent Injunction, their attempt to analogize to Nicodemus is unpersuasive, and thus they have not established that the citizens' state-law tort claims implicate substantial federal issues that would justify removal based on federal-question jurisdiction.

As an additional basis for asserting that the district court had federal-question jurisdiction, the quarry defendants argue that the 2008 Permanent Injunction will be undermined if the citizens' suit is allowed to proceed in state court. They contend that by seeking punitive damages, the citizens are attempting to prohibit trucks from using Second Avenue and are thus seeking to accomplish through this action that which the City could not do by ordinance. The citizens' suit, however, does not seek the prohibition of truck traffic on Second Avenue but instead seeks damages for the tortious use thereof. Consequently, whether the citizens' request for punitive damages constitutes the functional equivalent of a prohibitory ordinance barring truck traffic is a question for another day. Suffice it to say that it does not at this time establish the existence of federal-question jurisdiction.

We note that although they disclaim any intention of doing so, the quarry defendants seem to rely on principles of collateral estoppel and res judicata to justify removal. To the extent that their arguments are more properly characterized as preclusion defenses, such defenses do not constitute grounds for removal. See Rivet v. Regions Bank of La., 522 U.S. 470, 478 (1998) ("[C]laim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under § 1441(b). Such a defense is properly made in the state proceedings . . . .").

## B. Ancillary Jurisdiction

The quarry defendants also contend that the district court possessed ancillary jurisdiction over this case to protect the 2008 Permanent Injunction. The Supreme Court's decision in Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28 (2002), however, forecloses this argument. In Syngenta, the Court concluded that ancillary jurisdiction could not serve as the basis for removal:

> Read in light of the question presented in the petition for certiorari, perhaps petitioners' argument is that ancillary jurisdiction authorizes removal under 28 U.S.C. § 1441. As we explained in Peacock, however, a "court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims." Ancillary jurisdiction, therefore, cannot provide the original jurisdiction that petitioners must show in order to qualify for removal under § 1441.

Id. at 34 (internal citation omitted); see also Motion Control Corp. v. SICK, Inc., 354 F.3d 702, 706 (8th Cir. 2003) ("[A]ncillary jurisdiction does not provide an independent basis for removal or authorize removal under § 1441 . . . ."). Accordingly, because we conclude the district court did not have original jurisdiction over this action, ancillary jurisdiction cannot provide the jurisdiction necessary to qualify for removal.

## III. Conclusion

The quarry defendants have not met their burden of establishing the district court's jurisdiction over the citizens' claims. Removal of the case was thus improper, and the district court erred in denying the motion to remand. The denial of the citizens' motion to remand is reversed, the order enjoining the citizens from pursuing their claims in any forum is vacated, and the case is remanded to the district court with directions to remand the case to the Missouri state court from which it was removed.

BEAM, Circuit Judge, concurring.

I agree with the court's opinion that neither federal-question jurisdiction nor ancillary jurisdiction provided a basis for removal in this case. I write separately, however, to highlight the cumulative, purposeful and vexatious nature of this litigation. In my view, the plaintiffs (and their lawyers), through artful pleadings, continue to use the courts as a means of harassment rather than legitimate redress.

The district court's several orders aptly chronicle the tortuous history of this case. Without belaboring the point, I briefly emphasize how this case has progressed through the judicial system. In 2006, the City of Greenwood–at the behest of then-mayor Richard DeCourcy, who lived on Second Avenue–began enacting ordinances to discontinue the flow of truck traffic on the Second Avenue route. Martin Marietta Materials ("Martin") challenged the ordinances in federal district court. After the district court invalidated the first ordinance, Greenwood went back to the drawing board and enacted a final ordinance, again attempting to prevent quarry trucks from traveling on the Second Avenue route. On February 28, 2007, finding the final ordinance constitutionally suspect, the district court preliminarily enjoined the final ordinance. On July 3, 2008, through oral pronouncement, the district invalidated the final ordinance and permanently enjoined Greenwood from closing off all city routes to quarry truck traffic.

Undeterred by the federal proceedings–and seeking a more favorable outcome–on January 30, 2007, Greenwood and the lawyers involved in this case took its cause to Missouri state court, initiating parallel litigation concerning the final ordinance. Greenwood also added a public nuisance claim to its state complaint, alleging "Defendants' truck traffic annoys, injures, endangers, renders insecure, interferes with, or obstructs the rights or property of the whole community." City of Greenwood v. Martin Marietta Materials, Inc., 299 S.W.3d 606, 616 (Mo. Ct. App. 2009) (quotation omitted).

After obtaining a nearly $12 million judgment stemming from its public nuisance claims–and notwithstanding the federal preliminary injunction–Greenwood requested the state court to permanently enjoin quarry trucks from using Second Avenue. The state court issued the injunction. Two separate state appeals followed. In the first appeal, the Missouri Court of Appeals upheld the monetary judgment, but in the second appeal, it reversed the state trial court's injunction. Before entering any subsequent injunctions, the Missouri Court of Appeals cautioned the trial court to "consider thoroughly all previous rulings in state and federal court actions between these parties reflecting on the propriety of injunctive relief prohibiting through trucks in Greenwood." City of Greenwood v. Martin Marietta Materials, Inc., 311 S.W.3d 258, 268 (Mo. Ct. App. 2010). Once the state appeals had concluded, Greenwood and Martin entered into a settlement in which Martin agreed to pay Greenwood $7,000,000 in satisfaction of the state court judgment, and Greenwood designated Second Avenue as the route for quarry truck traffic.

The present litigation now enters its third installment with familiar faces and issues. With DeCourcy no longer the mayor and the City no longer willing to bear the time and expense of excessive litigation, these eighteen individual plaintiffs, who either own property or live on the Second Avenue route, have filled the void. Unsurprisingly, DeCourcy has resurfaced as a plaintiff, and perhaps more unsurprisingly, the same counsel have initiated the matter. This time around the plaintiffs have alleged a *private* nuisance, not a *public* nuisance. These claims "overlap and are interrelated." City of St. Louis v. Varahi, Inc., 39 S.W.3d 531, 536 (Mo. Ct. App. 2001); see generally 58 Am. Jur. 2d Nuisances § 25 (discussing "mixed nuisances"). Indeed, the only distinguishing characteristic between a public nuisance and a private nuisance is whether damages arise from an offender's unreasonable interference with either a public community right or a private property right. Varahi, 39 S.W.3d at 536. No doubt, plaintiffs will present the same proof that the City used to prove its public nuisance claim. Through settlement, the City has already collected substantial nuisance damages on behalf of the "whole community"–including those

-11-

living on Second Avenue–and this repetitive nuisance claim is nothing more than a repeated attempt to extract damages that have already been paid and extinguished. Although this rendition may technically evade federal jurisdiction, the harassing nature of this litigation and plaintiffs' counsel's tactics are apparent. Perhaps timely application of the doctrine of res judicata and collateral estoppel, possibly, accompanied by healthy doses of cost and fee shifting and well-placed lawyer and party sanctions, will return some measure of sensibility to this seemingly everlasting dispute.

I concur.

_____