# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2800

_____

Zerger & Mauer LLP

*Interested party - Appellant*

v.

City of Greenwood

*Objector - Appellee*

Joel Baker; Kathy Baker; Margaret L. Barnett; Matthew Wagner; Victoria
Wagner; Todd Durbin; Stephanie Durbin; Kendra Sallam; Evelyn Tombleson;
Glen Tombleson; Timothy Gust; Kiersten Gust; Diana Anderson; Cheri Williams;
Laura Decourcy; Richard Decourcy; Phillip Cooper; Marilyn Cooper

*Plaintiff*s

v.

Martin Marietta Materials, Inc.; Material Transport Company; Hanrahan Asphalt
Paving Co., Inc.; Hunt Martin Materials, LLC; Vance Brothers, Inc.; Patrick L.
Dusselier Foundation Company, Inc.; Superior Bowen Asphalt Company, L.L.C.;
Tom Peace Trucking, Co.; Bill Cassidy Trucking, Inc.; Lone Wolf Enterprises,
Inc.; Bluestem Trucking, Inc.; George J. Shaw Construction, Co.; Pavlich, Inc.;
O'Neil Trucking; Greg Bordner Construction, Co. , Inc.; Miles Excavating, Inc.;
Acker Trucking; Show-Me Trucking & Freight, Inc.; Pavestone Company, LLC;
Heller's Trucking; Roadhog Trucking, LLC; Geiger Trucking Company

*Defendant*s

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

————————

Submitted: September 24, 2013
Filed: May 30, 2014

————————

Before WOLLMAN, BEAM, and SMITH, Circuit Judges.

————————

BEAM, Circuit Judge.

This appeal is a companion to Baker v. Martin Marietta Materials, Inc., 745 F.3d 919 (8th Cir. 2014). In Baker, we determined that the district court lacked subject-matter jurisdiction over the merits and reversed the district court's jurisdictional ruling. Id. at 926. The appeal now before us concerns action the district court[1] took while purporting to exercise jurisdiction over that dispute, namely, disqualifying plaintiffs' counsel, Heather Esau Zerger, Steven E. Mauer, and the law firm of Zerger & Mauer LLP (collectively, "Zerger and Mauer"). Although we concluded that the district court lacked jurisdiction over the merits case, we now conclude the district court had authority to disqualify counsel and did not abuse its discretion in doing so.

I.    BACKGROUND

From 2006 through 2010, the City of Greenwood engaged in a dispute with Martin Marietta Materials ("Martin") arising out of a rock quarry located south of

——————————

[1] The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

-2-

Greenwood. Specifically, the dispute concerned quarry truck traffic traveling in interstate commerce through the City. Eventually, the parties entered into a settlement in which Martin paid Greenwood $7,000,000, and Greenwood agreed to designate Second Avenue for the truck traffic. In the settlement, Greenwood declared that the truck traffic was reasonable and did not constitute a nuisance. As Greenwood had obtained a prior judgment against Martin in state court amounting to nearly $12,000,000, the settlement represented a significant monetary concession. Greenwood made this concession, however, so it could designate the route it deemed most beneficial to the City–the Second Avenue route. Zerger and Mauer served as Greenwood's counsel throughout the litigation and settlement, receiving over $4,000,000 in fees.

Subsequently, on July 29, 2011, eighteen individual plaintiffs who held property interests on Second Avenue commenced action in Missouri state court against Martin and other entities (collectively, "Martin") involved in transporting materials from the quarry, seeking damages for a private nuisance, among other claims. Zerger and Mauer served as counsel for these plaintiffs.[2] Martin removed the case to federal district court. After determining it had subject-matter jurisdiction over the case, on June 26, 2012, the district court enjoined plaintiffs from pursuing their claims in any forum. This panel later reversed the district court's jurisdictional determination.

However, prior to the district court's resolution of the merits case, on February 21, 2012, Greenwood–a non-party–moved to disqualify Zerger and Mauer from representing the individual plaintiffs, contending that Zerger and Mauer's current representation constituted a conflict of interest. In Greenwood's view, Zerger and

---

[2]At some point between settling the Greenwood dispute and initiating the current plaintiffs' claims, Zerger and Mauer, the individuals, separated from their former law firm, Bryan Cave, LLP, and formed Zerger & Mauer, LLP.

Mauer were advancing arguments in the present litigation that directly conflicted with Greenwood's interests. The district court agreed with Greenwood and, on April 26, 2012, the district court disqualified Zerger and Mauer. Zerger and Mauer now appeal that ruling.

I.    DISCUSSION

A.    Disqualification Order

Because our prior opinion concluded that the district court lacked subject-matter jurisdiction, we now confront a threshold issue in the present case: does the district court's disqualification order withstand our appellate determination that the court lacked subject-matter jurisdiction over the merits case? For the reasons that follow, we conclude the jurisdictional error does not void the disqualification order.

Long ago, the Supreme Court laid down the bedrock principle that "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex Parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). However, this rule is not absolute. Indeed, if we determine for the first time on appeal that the district court lacked subject-matter jurisdiction, this "does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction." Willy v. Coastal Corp., 503 U.S. 131, 137 (1992); see generally 13 Charles Alan Wright, et al., Federal Practice and Procedure § 3522 (3d ed.) (discussing instances where proceedings upheld notwithstanding lack of jurisdiction). In Willy, for example, the Supreme Court upheld the district court's Rule 11 sanctions ruling against a party and his attorney, even though the court of appeals later determined that the district court lacked subject-matter jurisdiction. 503 U.S. at 139. According to the Supreme Court, the Rule 11 order was collateral to the merits, and "the maintenance of orderly procedure,

-4-

even in the wake of a jurisdiction ruling later found to be mistaken—justifies the conclusion that the sanction ordered here need not be upset." Id. at 137.

Similar to the Court's observations in Willy, the seemingly inflexible jurisdictional rules function alongside the understanding that all courts have inherent authority to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (quotation omitted). Naturally, a district court's inherent powers extend to managing its bar and disciplining attorneys that appear before it. Id. We have recognized that "[t]he district court's inherent power to govern the practice of lawyers appearing before it encompasses, among other things, the authority to police lawyer conduct and to guard and to promote civility and collegiality among the members of its bar." Wescott Agri-Products, Inc. v. Sterling State Bank, Inc., 682 F.3d 1091, 1095 (8th Cir. 2012) (internal quotation omitted).

Here, we confront a procedural situation nearly identical to Willy: the district court entered the disqualification order under the justified misapprehension that it had jurisdiction, and this panel later determined the district court lacked subject-matter jurisdiction over the merits case. While exercising jurisdiction, the district court resolved an important attorney ethics issue brought to its attention by Greenwood. Under these circumstances, the district court's inherent need to manage its bar and uphold the rules of professional conduct are no less significant for the "maintenance of orderly procedure" than the Rule 11 sanctions Willy declined to overturn. So, too, for the purposes of evaluating the propriety of the district court's order absent jurisdiction, the resolution of Greenwood's motion to disqualify is separate from the merits case. See CP Solutions PTE, Ltd. v. Gen. Elec. Co., 550 F. Supp. 2d 298, 301 (D. Conn. 2008) (determining that court could entertain counsel's motion to withdraw pursuant to the rules of professional conduct notwithstanding that it already determined it lacked subject-matter jurisdiction over merits). Therefore, under

present circumstances,[3] the district court's disqualification order should enjoy the same treatment as a Rule 11 sanction order, and we conclude the jurisdictional infirmity did nothing to disturb the district court's order.

## B. Duties Owed to Former Clients

As the lack of subject-matter jurisdiction does not affect the district court's disqualification order, we now move to the substantive issue: whether the district court abused its discretion in disqualifying Zerger and Mauer from representing the plaintiffs. See Droste v. Julien, 477 F.3d 1030, 1035 (8th Cir. 2007) ("We review the grant of a motion to disqualify a lawyer as trial counsel for an abuse of discretion, but because the potential for abuse by opposing counsel is high, the Court subjects such motions to particularly strict scrutiny.").[4] In our review, we apply the same rules of professional conduct as adopted by the district court. Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1154 (8th Cir. 1999). The Western District of Missouri has adopted the Missouri Rules of Professional Conduct. In re Fletcher, 424 F.3d 783, 785 (8th Cir. 2005).

Before the district court, Greenwood sought Zerger and Mauer's disqualification due to a conflict of interest that arose out of the attorneys' former

[3]Generally, we lack jurisdiction to hear an appeal from interlocutory orders disqualifying counsel as it does not satisfy the collateral order doctrine. Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 440 (1985). However, Zerger and Mauer appealed from the disqualification order only after the district court issued its final judgment in the merits case and in conjunction with the plaintiffs' appeal of that decision. Thus, with the issuance of the district court's final decision, we have appellate jurisdiction to review the disqualification order.

[4]We note that in a case such as the present one, where a non-party, former client–not opposing counsel–has sought disqualification, the potential for abuse is considerably diminished.

representation of Greenwood and its current representation of the plaintiffs. Missouri Rule of Professional Conduct 4-1.9(a) outlines the duties an attorney owes former clients:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

As the Rule indicates, "[t]o establish a conflict of interest . . . , a movant must prove that: (1) the attorney had a former attorney-client relationship with the movant; (2) the interests of the attorney's current client are materially adverse to the movant's interests; and (3) the current representation involves the same or a substantially related matter as the attorney's former representation of the movant." Polish Roman Catholic St. Stanislaus Parish v. Hettenbach, 303 S.W.3d 591, 600-601 (Mo. Ct. App. 2010). Presently, element (1) is not in dispute, so we focus on elements (2) and (3).

The Comments following Rule 4-1.9 offer helpful guidance. Comment [2] indicates that "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client." The key question is whether the lawyer's "subsequent representation can be justly regarded as a changing of sides in the matter in question." Rule 4-1.9 Cmt. [2]. Comment [3] explains that "[m]atters are 'substantially related' . . . if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Comment [3] offers the following example: a lawyer who aided a client in securing environmental permits for a shopping center would be

-7-

precluded from later representing neighbors who oppose rezoning on the basis of environmental concerns.

Rule 4-1.9(a)'s "primary concern is the possibility, or appearance of the possibility, that the attorney may have received confidential information during the prior representation." In re Carey, 89 S.W.3d 477, 492 n.14 (Mo. 2002) (internal quotations omitted). The Rule is prophylactic, aimed at "prevent[ing] even the potential that a former client's confidences and secrets may be used against him." Id. at 493 (quotation omitted). Thus, when representations are substantially related, we "will presume that confidences were disclosed for conflict of interest purposes." Id. at 492 n.14.

Essentially, Zerger and Mauer argue that the district court failed to appreciate the specific facts of the distinct representations and failed to require Greenwood to satisfy its burden when the court broadly concluded the matters were substantially related. According to Zerger and Mauer, the only aspect of the two representations that had any relation is Martin's use of Second Avenue. The two matters, Zerger and Mauer suggest, involved different claims, parties, and relief. We disagree and decline to adopt Zerger and Mauer's exceedingly narrow view of their representation in the two matters.

To determine if matters are substantially related, we must examine the factual and issue relationship between the two representations. Id. at 494. Here, after closely examining the record in this case, it is clear that the factual underpinnings of the two representations are nearly identical. Similarly, the legal issues central to both representations are substantially related, largely centering on the reasonableness of Martin's conduct. Although a private nuisance claim and a public nuisance claim may protect distinct rights, the legal theories are exceedingly intertwined. See City of St. Louis v. Varahi, Inc., 39 S.W.3d 531, 536 (Mo. Ct. App. 2001). This is especially true in the present case where there seems to be considerable overlap in

proof and witnesses seeking to establish Martin's unreasonable conduct. Compare First Amended Complaint at 7-11 (outlining fact allegations to establish Second Avenue residents' private nuisance claim), with City of Greenwood v. Martin Marietta Materials, Inc., 299 S.W.3d 606, 619 (Mo. Ct. App. 2009) (outlining evidence and testimony produced by Second Avenue residents to prove a public nuisance). Moreover, the substantial fact and issue overlap overshadows any slight nuance the two causes of action present.[5] See In re Carey, 89 S.W.3d at 496. Finally, given that the two matters are substantially related, there is a substantial probability–or, at the very least, a substantial appearance–that Greenwood disclosed confidential information related to the settlement negotiations that the plaintiffs could use to their advantage. While Zerger and Maurer believe Greenwood has failed to meet its burden, we think the record abundantly supports the district court's determination that the two matters were substantially related.

Next, Zerger and Maurer assert that the district court abused its discretion in concluding their current representation was materially adverse to Greenwood's interests. Generally, whether a former client and current client have materially adverse interests is not a difficult question, as the situation usually involves a new client suing a former client. Simpson Performance Prods., Inc. v. Robert W. Horn, P.C., 92 P.3d 283, 287-88 (Wyo. 2004). However, the question is more complicated when a former client, "although not directly involved in the [current] litigation, may be affected by it in some manner." Id. at 288. When such is the case, like it is here, a fact-specific analysis is required in order to evaluate "the degree to which the current representation may actually be harmful to the former client." Id. This

---

[5]Apparently, at one time, Zerger and Mauer also thought the public and private nuisance claims had substantial overlap, alleging in plaintiffs' original complaint that because a jury determined that the trucks constituted a nuisance in Greenwood's public nuisance action, Martin was "collaterally estopped from taking a position to the contrary" in plaintiffs' private nuisance action.

analysis focuses on "whether the current representation may cause legal, financial, or other identifiable detriment to the former client." Id.

First, Zerger and Mauer argue that the settlement term, where Greenwood agreed that the truck traffic is reasonable and not a nuisance, involved a public nuisance and has no bearing on the plaintiffs' private nuisance claims. Succinctly, Zerger and Mauer complain that "Greenwood cannot declare on behalf of individual citizens that certain conduct does not constitute a private nuisance." We quickly reject this argument as we are unpersuaded by Zerger and Mauer's continued attempt to make public and private nuisances unrelated concepts, especially in light of the facts of this case.

Second, Zerger and Mauer also posit that the settlement term at issue is not material to the settlement itself. According to Zerger and Mauer, even without the term, quarry traffic is still able to use the Second Avenue route, and the only reason Greenwood included the term was to provide assurances to Martin that the City would not later assert another public nuisance claim. Zerger and Mauer trivialize the importance of the settlement term. The settlement term is part of a bargained-for exchange in which Greenwood offered concessions in order to dictate the route Martin used for quarry traffic. And, as we note below, this settlement term is part of a broader conflict.

Third, Zerger and Mauer contend the district court incorrectly concluded that material adversity existed when it highlighted that if the plaintiffs prevailed on their claims, the City may be required to open up other trucking routes. As Zerger and Mauer see the situation, the district court's finding on this point is based on pure speculation. Additionally, Zerger and Mauer claim the speculative harm of hindering Greenwood's interests in the settlement agreement may only come about if the plaintiffs' private nuisance claim succeeds. If this is the case, their argument goes, the settlement provided Martin no protection because "Greenwood could not have

-10-

permissibly contracted with Martin Marietta to allow Martin Marietta to violate the rights of the <u>Baker</u> Plaintiffs."

By its very nature, Rule 4-1.9(a) is prophylactic and involves a considered judgment of realistic possibilities.  <u>See</u> <u>Nat'l Med. Enters., Inc. v. Godbey</u>, 924 S.W.2d 123, 132 (Tex. 1996) ("Adversity is a product of the likelihood of the risk and the seriousness of its consequences.").  Here, Zerger and Mauer advocate a position that contradicts a term in Greenwood's settlement.   Furthermore, the attorneys seek to collect damages on behalf of the plaintiffs for Martin's allegedly tortious use of Second Avenue–a path that Greenwood desires to reserve as the exclusive route for truck traffic.  Not only do plaintiffs have an interest in collecting substantial damages, they also naturally have an interest in otherwise disrupting Martin's use of Second Avenue, even if they have not sought an injunction.  As the plaintiffs pursue their claims, there is a very real possibility that other routes will come into play.[6]  And, whatever rights the plaintiffs retain notwithstanding the settlement, their overall interests still remain materially adverse to Greenwood's, and Greenwood may demand that its former counsel not advocate positions that pose the serious threat of once again embroiling Greenwood in protracted litigation.  Accordingly, based on the present record, the district court did not abuse its discretion in evaluating the risks and interests at issue.

---

[6]Zerger and Mauer also criticize the district court for looking at arguments they made on behalf of the plaintiffs with regard to the jurisdictional issue.  Specifically, in prior briefing on jurisdiction, the plaintiffs posed the following scenario: "In the event the ability of Quarry Defendants to utilize the Second Avenue Route is impeded, including by judicial action, Quarry Defendants would then be free to enforce the injunction and require the City to designate some alternate route through Greenwood."  We fail to see how the district court can be faulted for relying on the plaintiffs' own statement to show a real–rather than hypothetical–possibility that the plaintiffs' interests will be at odds with Greenwood's.

Finally, Zerger and Mauer claim that language in the district court's order dismissing the merits case contradicts its disqualification ruling. This argument implicitly asks us to evaluate a portion of the district court's merits order. As this panel has already determined the district court lacked jurisdiction over the merits, we decline the invitation to delve into the now vacated merits order.

In the end, Zerger and Mauer's two representations closely resemble the example provided in the Rule's Comments. Indeed, just as the Rule prohibits attorneys from switching positions on a factually related environmental issue for different clients, Zerger and Mauer are precluded from switching on this factually related nuisance issue for new clients. Accordingly, under current circumstances, we do not hesitate to conclude that Zerger and Mauer's about face "can be justly regarded as a changing of sides in the matter in question," and we perceive no abuse of discretion. Rule 4-1.9 Cmt. [2].

We have become increasingly troubled with Zerger and Mauer's tactics throughout this litigation. Not only have they played jurisdictional games with the federal courts, but now the attorneys have gone a step further, attempting to evade the Rules of Professional Conduct, raising serious questions concerning their integrity as well as their interest in and attention to, ethical standards. It is one thing to have an opposing party use a motion to disqualify as an abusive tactic, but it is a problem of a different dimension when a former, non-party client is forced to enter a dispute through a motion designed to protect its interests because its previous counsel proved to be unwilling to police themselves. "Every lawyer owes a solemn duty . . . to strive to avoid not only professional impropriety but also the appearance of impropriety." In re Carey, 89 S.W.3d at 496 (quotation omitted) (alteration in original). Zerger and Mauer have failed to uphold that duty. Nevertheless, the consequences flowing from this opinion may be more academic than real, as the district court's disqualification order only governs Zerger and Mauer's representation in the federal proceedings. As

the merits case moves upon remand to state courts, we envision that this important ethical matter will become an issue in the other forum.

## III.  CONCLUSION[7]

We affirm the judgment of the district court.

_____

---

[7]On appeal, Zerger and Mauer move to strike Greenwood's separately filed appendix on the basis that several items included in the separate appendix were not part of the record before the district court.  The materials that Zerger and Mauer seek to strike consist of court filings or documents in the district court and the Missouri trial court.  Although we find it unnecessary to resort to the supplementary materials to dispose of this case, "federal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue," Conforti v. United States, 74 F.3d 838, 840 (8th Cir. 1996) (quotation omitted), including, for the first time on appeal, specific filings in related cases, Donner v. Alcoa, Inc., 709 F.3d 694, 697-98 n.2 (8th Cir. 2013).  We deny Zerger and Mauer's motion to strike.