JAMES O. BROWNING, UNITED STATES DISTRICT JUDGE
*832 THIS MATTER comes before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition, filed July 24, 2018 (Doc. 20)("PFRD"), advising the Court to: (i) grant Defendant Chapter 11 Trustee Craig H. Dill's Amended Motion to Dismiss and to Sanction Plaintiffs, filed November 6, 2017 (Doc. 12)("Dill MTD"); and (ii) grant Defendant David Frewing and U.S. Bowling's Amended Motion to Dismiss, or in the alternative, Motion to Stay Proceedings, filed November 15, 2017 (Doc. 14)("Frewing MTD"). The parties have not filed any objections to the PFRD, which waives their right to review of the PFRD. See United States v. One Parcel of Real Prop., 73 F.3d 1057, 1060 (10th Cir. 1996) (" One Parcel"). Because the Court concludes that the PFRD by the Honorable Steven C. Yarbrough United States Magistrate Judge for the United States District Court for the District of New Mexico is not clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, the Court will: (i) adopt the PFRD as its own; (ii) grant the Dill MTD; and (iii) grant the Brewing MTD. Accordingly, the Court will dismiss the Complaint to Recover Compensatory, Consequential and Punitive Damages for Defendants' Breach of Contract, Promissory Estoppel, and Negligent Misrepresentation, filed June 23, 2017 (Doc. 1)("Complaint"), with prejudice.
LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS
District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition. See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without parties' consent, to hear a pretrial matter dispositive of a claim or defense ...."). Rule 72(b)(2) governs objections to those recommendations: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b). Finally, when resolving objections to a Magistrate Judge's recommendation, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).
Similarly, 28 U.S.C. § 636 provides:
A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.
28 U.S.C. § 636(b)(1)(C).
"The filing of objections to the magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute." One Parcel, 73 F.3d at 1059 (quoting Thomas v. Arn, 474 U.S. 140, 147, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ). As the United States Court of Appeals for the Tenth Circuit has noted, "the filing of *833 objections advances the interests that underlie the Magistrate's Act,[1 ] including judicial efficiency." One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986) ; United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981) ).
The Tenth Circuit held in One Parcel"that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." One Parcel, 73 F.3d at 1060. "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, ha[s] adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.' " One Parcel, 73 F.3d at 1059 (citations omitted). In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). And, in an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007) (unpublished).[2]
In One Parcel, the Tenth Circuit, in accord with other Courts of Appeals, expanded the waiver rule to cover objections that are timely but too general. See One Parcel, 73 F.3d at 1060. The Supreme Court of the United States of America -- in the course of approving the United States Court of Appeals for the Sixth Circuit's use of the waiver rule -- has noted:
It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings. The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. See S. Rep. No. 94-625, pp. 9-10 (1976)(hereafter Senate Report); H.R. Rep. No. 94-1609, p. 11 (1976); U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report). There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate judge's report than the court considers appropriate. Moreover, the Subcommittee *834 that drafted and held hearing on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates. Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or ruling on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time." See Jurisdiction of the United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis added)(hereafter Senate Hearings). The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice. See id., at 11 ("If any objections come in, ... I review [the record] and decide it. If no objections come in, I merely sign the magistrate's order."). The Judicial Conference of the United States, which supported the de novo standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report. See Senate Hearings, at 35, 37. Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review. There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed. It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort. We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.
Thomas v. Arn, 474 U.S. at 150-52, 106 S.Ct. 466 (emphasis in original)(footnotes omitted).
The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.' " One Parcel, 73 F.3d at 1060 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991) ("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")(citations omitted) ). Cf. Thomas v. Arn, 474 U.S. at 154, 106 S.Ct. 466 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard"). In One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal because it would advance the interests underlying the waiver rule. See 73 F.3d at 1060-61 (citing cases from other Courts of Appeals where district courts elected to address merits despite potential application of waiver rule, but the Courts of Appeals opted to enforce waiver rule).
Where a party files timely and specific objections to the Magistrate Judge's proposed findings and recommendations, *835 on "dispositive motions, the statute calls for a de novo determination, not a de novo hearing." United States v. Raddatz, 447 U.S. 667, 674, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). "[I]n providing for a 'de novo determination' rather than a de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Raddatz, 447 U.S. at 676, 100 S.Ct. 2406 (quoting 28 U.S.C. § 636(b) )(citing Mathews v. Weber, 423 U.S. 261, 275, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976) (emphases in original) ). The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation" when conducting a de novo review of a party's timely, specific objections to the magistrate's report. In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995). "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence ... the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." Gee v. Estes, 829 F.2d 1005, 1008-09 (10th Cir. 1987).
A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the Magistrate Judge's report "based upon conflicting evidence or testimony." Gee v. Estes, 829 F.2d at 1009. On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable deference to the magistrate's order." Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988). A district court need not, however, "make any specific findings; the district court must merely conduct a de novo review of the record." Garcia v. City of Albuquerque, 232 F.3d 760, 766 (10th Cir. 2000). "[T]he district court is presumed to know that de novo review is required .... Consequently, a brief order expressly stating the court conducted de novo review is sufficient." Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996) (citing In re Griego, 64 F.3d at 583-84 ). "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise." Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993). The Tenth Circuit has previously held that a district court properly conducted a de novo review of a party's evidentiary objections when the district court's "terse" order contained one sentence for each of the party's "substantive claims" and did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion." Garcia v. City of Albuquerque, 232 F.3d at 766. The Tenth Circuit has explained that any brief district court order that "merely repeat[s] the language of § 636(b)(1) to indicate its compliance" is sufficient to demonstrate that the district court conducted a de novo review:
It is common practice among district judges in this circuit to make such a statement and adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis. We cannot interpret the district court's statement as establishing that it failed to perform the required de novo review.
In re Griego, 64 F.3d at 584.
Notably, because a district court may place whatever reliance it chooses on a Magistrate Judge's proposed findings and recommendations, a district court "may accept, reject, or modify, in whole or in part, *836 the findings or recommendations made by the magistrate," 28 U.S.C. § 636(b)(1), as "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations," United States v. Raddatz, 447 U.S. at 676, 100 S.Ct. 2406 (emphasis omitted). See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d at 724-25 (holding that the district court's adoption of the Magistrate Judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and United States v. Raddatz require).
Where no party objects to the Magistrate Judge's proposed findings and recommended disposition, the Court has, as a matter of course in the past and in the interests of justice, reviewed the Magistrate Judge's recommendations. In Pablo v. Soc. Sec. Admin., 2013 WL 1010401 (D.N.M. 2013) (Browning, J.), the plaintiff failed to respond to the Magistrate Judge's proposed findings and recommended disposition, and thus waived his right to appeal the recommendations, but the Court nevertheless conducted a review. The Court generally does not, however, "review the PF & RD de novo, because the parties had not objected thereto, but rather review[s] the recommendations to determine whether they clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion." Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4. The Court, thus, does not determine independently what it would do if the issues had come before the Court first, but rather adopts the proposed findings and recommended disposition where "[t]he Court cannot say that the Magistrate Judge's recommendation ... is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion." Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4. See Alexandre v. Astrue, 2013 WL 1010439, at *4 (D.N.M. 2013) (Browning, J.)("The Court rather reviewed the findings and recommendations of the Honorable Stephan M. Vidmar, United States Magistrate Judge, to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion. The Court determines that they are not, and will therefore adopt the PFRD."); Trujillo v. Soc. Sec. Admin., 2013 WL 1009050, at *5 (D.N.M. 2013) (Browning, J.)(adopting the proposed findings and conclusions, noting: "The Court did not review the ARD de novo, because Trujillo has not objected to it, but rather reviewed the ... findings and recommendations to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, which they are not."). This review, which is deferential to the Magistrate Judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or a full-fledged review. Accordingly, the Court considers this standard of review appropriate. See Thomas v. Arn, 474 U.S. at 151, 106 S.Ct. 466 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate."). The Court is reluctant to have no review at all where it issues an order adopting the Magistrate Judge's proposed findings and recommendations.
ANALYSIS
Although no party objected to the PFRD before the deadline to do so, the Court has reviewed the PFRD. Upon review, the Court determines that Magistrate Judge Yarbrough's findings and recommended disposition in the PFRD are not clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.
*837 Accordingly, the Court will: (i) adopt the PFRD as its own; (ii) grant the Dill MTD; and (iii) grant the Frewing MTD.
Because the Court also grants Dill's request for sanctions, Dill shall file an affidavit of costs in connection with the preparation of his Motion to Dismiss within fourteen calendar days of the entry of this Memorandum Opinion and Order. Further, consistent with Magistrate Judge Yarbrough's recommendation, the Court orders that filing restrictions be placed on the Plaintiffs to prevent future frivolous lawsuits against Dill. Therefore, as a precondition to filing suit against Dill, the Plaintiffs must: (i) file a petition with the Clerk of Court requesting leave to file a pro se proceeding against Dill; (ii) file with the Clerk of Court a notarized affidavit setting out the bases of the causes of action they intend to pursue against Dill and specify why the intended causes of action are not directed toward Dill in his capacity as the bankruptcy trustee; or (iii) aver that they have received permission in bankruptcy court to bring suit against Dill in his capacity as trustee of the bankruptcy estate.
IT IS ORDERED that: (i) the Magistrate Judge's Proposed Findings and Recommended Disposition, filed July 24, 2018 (Doc. 20), is adopted; (ii) the Complaint to Recover Compensatory, Consequential and Punitive Damages for Defendants' Breach of Contract, Promissory Estoppel, and Negligent Misrepresentation, filed June 23, 2017 (Doc. 1), is dismissed with prejudice; (iii) Defendant Craig Dill shall file an affidavit of costs in connection with the preparation of his Amended Motion to Dismiss and to Sanction Plaintiffs, filed November 6, 2017 (Doc. 12), within fourteen calendar days of the entry of this Memorandum Opinion and Order; and (iv) filing restrictions will be placed on the Plaintiffs to prevent future frivolous lawsuits against Dill.
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
STEVEN C. YARBROUGH, UNITED STATES MAGISTRATE JUDGE
THIS MATTER comes before the Court on Defendant Craig Dill's Amended Motion to Dismiss for Failure to State a Claim, Lack of Jurisdiction, and for Sanctions (Doc. 12) and Defendants David Frewing and U.S. Bowling Corporation's Amended Motion to Dismiss, or in the alternative, Stay the Proceedings (Doc. 14). This matter was referred to me pursuant to 28 U.S.C. § 636(b)(1)(B), (b)(3) by United States District Judge James O. Browning on January 29, 2018. Doc. 18. Consistent with that Order of Reference, the Court enters these proposed findings and recommended disposition (PFRD) recommending that Defendants' Motions be GRANTED for the reasons explained below.
I. BACKGROUND
Plaintiffs Rick Jaramillo and Steve Duran are equity partners in Railyard Company, LLC. On September 4, 2015, Railyard Company commenced Chapter 11 bankruptcy proceedings. See In re Railyard Co., LLC, Case No. 15-12386-t11, Doc. 1. On July 13, 2016, United States Bankruptcy Judge Robert Jacobvitz entered an order approving the appointment of Defendant Craig Dill as Chapter 11 Trustee of the bankruptcy estate over the objections of Plaintiffs Duran and Jaramillo. Bank. Proc., Doc. 308. On August 18, 2018, Defendant Dill, in his capacity as Trustee, moved for an order approving the rejection of an executory contract between Railyard Company, LLC and Plaintiff Railyard Brewing Company. United States *838 Bankruptcy Judge David T. Thuma granted the motion and approved rejection of the lease. Bank. Proc., Doc. 508. Judge Thuma further approved rejection of a pre-petition lease with Plaintiff Ringside Entertainment and terminated that lease as well. Bank. Proc., Doc. 420.
Both leases concerned a space at a two-story, multi-tenant building at the Railyard in Santa Fe, New Mexico. See Bank. Proc., Doc. 629. Plaintiff Ringside Entertainment's lease contemplated use of the space as a combination restaurant, bar, and eight-lane bowling center. Id. Pursuant to the plan, Plaintiff Ringside contracted with U.S. Bowling for the purchase of bowling lanes and related bowling equipment. Id. At some point, however, Ringside Entertainment abandoned this project. Id. On January 30, 2014, Plaintiff Railyard Brewing signed a lease for the space with the intention of operating the restaurant, bar, and bowling center. Id. After bankruptcy proceedings were commenced, Defendant Dill determined that a bowling center would not be feasible at that location and moved for an order approving the sale of the bowling equipment. Plaintiffs Duran and Jaramillo objected to the sale of the equipment and contended that the bowling equipment did not belong to the bankruptcy estate. Id. at 7. Plaintiffs Duran and Jaramillo further argued in the alternative that the sale should not be completed because the bankruptcy estate has claims against U.S. Bowling for negligent installation of the bowling equipment. Id. at 8. Judge Thuma rejected these arguments and approved sale of the bowling equipment on June 21, 2017. Bank. Proc., Doc. 629 at 11; Bank. Proc., Doc. 640. U.S. Bowling ultimately entered into an agreement to purchase back the bowling equipment. Bank Proc., Doc. 640.
On June 23, 2017, Plaintiffs filed the present lawsuit against Chapter 11 Trustee Craig Dill, U.S. Bowling, and David Frewing bringing claims for breach of contract, promissory estoppel, and negligent misrepresentation. Civ. No. 17-673, Doc. 1. Plaintiffs' claims are premised on the circumstances surrounding U.S. Bowling's installation of the bowling equipment and the eventual sale of the bowling equipment by Defendant Dill. While difficult to parse the exact facts being asserted in support of Plaintiffs' claims, Plaintiffs allege that they entered into an agreement for the installation of bowling equipment with U.S. Bowling. Doc. 1 at ¶ 12. Plaintiffs allege that in March 2013, Jaramillo signed a change order for the installation of sound attenuation equipment due to complaints from other tenants regarding noise emanating from the bowling equipment. Doc. 1 at ¶ 15. Plaintiffs allege that U.S. Bowling represented that installation of the sound attenuation equipment would satisfy the other tenants' concerns. Doc. 1 at ¶ 15. Plaintiffs allege, however, that they continued to receive complaints regarding noise. Doc. ¶ 16. Plaintiffs allege that they continued to exchange communications with U.S. Bowling regarding completion of the sound attenuation equipment as well as other bowling equipment. Doc. ¶ 17. Plaintiffs allege that the project was not completed because Defendant Dill subsequently moved in the bankruptcy proceedings to terminate the project. Doc. 1 at ¶ 21. Plaintiffs allege Defendant Dill subsequently entered into an agreement with U.S. Bowling for U.S. Bowling to purchase the bowling equipment at a significantly reduced price. Doc. 1 at ¶ 22. Plaintiffs further allege that U.S. Bowling did not have the appropriate contractor's licenses to undertake the work contrary to state law. Doc. 1 at ¶ 24. Plaintiffs allege that Defendant Dill is "aiding and abetting" U.S. Bowling's unlicensed contracting work and conspired with U.S. Bowling "in its unjust enrichment." Doc. 1 at ¶ 26.
*839 This is not the first lawsuit Plaintiffs Steven Duran and Rick Jaramillo have pursued against Defendant Dill in his capacity as trustee of the bankruptcy estate. On August 15, 2016, Plaintiffs filed suit against Mr. Dill and attempted to nullify Judge Jacobvitz's order approving his appointment as trustee. See Duran v. Dill , Civ. No. 16-928. Chief Judge William P. Johnson ultimately dismissed the plaintiffs' Complaint on the bases that (1) Defendant Dill, in his capacity as trustee, was immune from suit; (2) the court lacked subject matter jurisdiction because the plaintiffs had not obtained permission to sue Defendant Dill, and (3) the plaintiffs insufficiently served him. See id. Doc. 6 at 5-7.
In the present case, Defendants filed their Amended Motions to Dismiss on November 1, 2017, and November 6, 2017, respectively. Defendants raise multiple reasons as to why Plaintiffs' Complaint should be dismissed. Both Defendants contend that (1) the Court does not have federal question or diversity jurisdiction; (2) Plaintiffs do not have standing to pursue claims set forth in the Complaint, which are exclusively bankruptcy estate property; (3) Plaintiffs have willfully violated the automatic stay in the bankruptcy proceeding; and (4) Plaintiffs have failed to comply with D.N.M.LR-Civ. 83.7 requiring corporations, partnerships, or business entities to be represented by attorneys authorized to practice law before this Court. Defendant Dill separately also moves for dismissal on the basis that he is entitled to quasi-judicial immunity in his capacity as trustee of the bankruptcy estate and that the Court lacks subject matter jurisdiction because Plaintiffs failed to obtain the permission of the Bankruptcy Court to sue him in that capacity. Defendant Frewing separately contends that Plaintiffs have failed to state a claim against him.
Plaintiffs did not respond to Defendants' Amended Motions to Dismiss. Although the Court's local rules provide that a party's failure to respond to a motion generally constitutes consent to grant the motion, the Court "cannot...grant a motion to dismiss or a motion for summary judgment based solely on plaintiff's failure to respond and must consider the merits of the motion." See Issa v. Comp USA , 354 F.3d 1174, 1177-78 (10th Cir. 2003). As explained below, because neither federal question nor diversity jurisdiction exists, I recommend concluding that the Court lacks subject matter jurisdiction and that Plaintiffs' Complaint should be dismissed.
II. ANALYSIS
A. Plaintiffs Duran and Jaramillo are Not Permitted to Represent Railyard Brewing Company, LLC and Ringside Entertainment, LLC Pro Se
As an initial matter, the Court notes that Plaintiffs Duran and Jaramillo are proceeding pro se. There has been no entry of appearance on behalf of Railyard Brewing Company, LLC or Ringside Entertainment, LLC. The Supreme Court of the United States has directed lower courts to hold pro se litigants' pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The pro se litigant "nevertheless must follow the same rules of procedure that govern other litigants," Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992), and it is not "the proper function of the district court to assume the role of advocate for the pro se litigant," Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).
Under this district's local rules, "a corporation, partnership or business entity other than a natural person must be represented *840 by an attorney authorized to practice before this Court." D.N.M.LR-Civ. 83.7. Although it is certainly permissible for Plaintiffs Duran and Jaramillo to represent themselves pro se in this litigation, under D.N.M.LR-Civ. 83.7, they cannot represent Plaintiffs Railyard Brewing Company or Ringside Entertainment. Both of these Plaintiffs are limited liability companies and are therefore obviously not natural persons. To the extent that Plaintiffs Jaramillo and Duran continue to pursue claims in this lawsuit as pro se litigants, such representation shall be limited to their individual interests.
B. Federal Jurisdiction
"Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction. There are two statutory bases for federal subject-matter jurisdiction: diversity jurisdiction under 28 U.S.C. § 1332 and federal-question jurisdiction under 28 U.S.C. § 1331." Nicodemus v. Union Pac. Corp. , 318 F.3d 1231, 1235 (10th Cir. 2003) (internal quotations and citations omitted). "If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence." Karnes v. Boeing Co. , 335 F.3d 1189, 1193 (10th Cir. 2003) (citing United States ex rel. Hafter v. Spectrum Emergency Care, Inc. , 190 F.3d 1156, 1160 (10th Cir. 1999) ).
Because Plaintiffs did not respond to Defendants' Amended Motions to Dismiss, the only jurisdictional facts proffered by Plaintiffs appear in their Complaint. Plaintiffs Duran and Jaramillo allege that they reside and are domiciled in Santa Fe, New Mexico. Doc. 1 at ¶¶ 1-2. Plaintiffs allege that Plaintiffs Railyard Brewing Co., and Ringside Entertainment are limited liability companies organized under the laws of the State of New Mexico with their place of business being in Santa Fe, New Mexico. ¶¶ 3-4. Plaintiffs allege that Defendant U.S. Bowling is a corporation organized in the State of Nevada with its principle place of business in Chino, California. Doc. 1 at ¶ 5. Plaintiffs allege that Defendant David Frewing resides in Chino, California. Doc. 1 at ¶ 6. Finally, Plaintiffs allege that Defendant Dill resides in Albuquerque, New Mexico. Doc. 1 ¶ 7. Plaintiffs do not clarify whether they are asserting that the Court has federal question jurisdiction or diversity jurisdiction but instead merely state that based on the above facts the Court has "jurisdiction over the parties and the subject matter of this action." Doc. 1 at ¶ 10. I will accordingly consider both potential bases of jurisdiction.
C. Law Regarding Federal Question Jurisdiction
A federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13, 57 S.Ct. 96, 81 L.Ed. 70 (1936) ). As "the master of the claim," the plaintiff may choose to sue in state court rather than in federal court "by exclusive reliance on state law." Caterpillar, Inc. v. Williams, 482 U.S. at 392, 107 S.Ct. 2425.
The defendant may not try to sneak a federal question through the back door by raising a federal defense, for "it is now settled law that a case may not be removed to federal court on the basis of a federal defense ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."
*841 Caterpillar, Inc. v. Williams, 482 U.S. at 393, 107 S.Ct. 2425 (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ). See Nicodemus v. Union Pac. Corp. , 318 F.3d 1231, 1236 (10th Cir. 2003) ("It is well settled that '[a] defense that raises a federal question is inadequate to confer federal jurisdiction.' " (quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) ) ). While a plaintiff is free to plead a federal question in his complaint, "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." Caterpillar, Inc. v. Williams, 482 U.S. at 399, 107 S.Ct. 2425. Even the plaintiff can only go so far in attempting to invoke federal-question jurisdiction, because "[a]ny statements in the complaint which go beyond a statement of the plaintiff's claim and anticipate or reply to a probable defense are to be disregarded" in deciding whether federal-question jurisdiction exists. Mescalero Apache Tribe v. Martinez, 519 F.2d 479, 481 (10th Cir. 1975).
In addition to the requirement that the federal question appear on the face of the complaint, a "plaintiff's cause of action must either be: (i) created by federal law; or (ii) if it is a state-created cause of action, 'its resolution must necessarily turn on a substantial question of federal law.' " Nicodemus v. Union Pac. Corp. , 318 F.3d 1231, 1235 (10th Cir. 2003) (quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 808, 106 S.Ct. 3229 ). As for the second method, beyond the requirement of a "substantial" question of federal law at the heart of the case, the federal question must also be "actually disputed," and its resolution must be necessary to resolution of the case. Grable & Sons Metal Prods. v. Darue Eng'g & Mfg. , 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). Finally, the exercise of federal-question jurisdiction must also be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Grable & Sons Metal Prods. v. Darue Eng'g & Mfg. , 545 U.S. at 313, 125 S.Ct. 2363. In particular, the Court must determine whether recognition of federal-question jurisdiction will federalize a "garden variety" state law claim that will overwhelm the judiciary with cases traditionally heard in state courts. Grable & Sons Metal Prods. v. Darue Eng'g & Mfg. , 545 U.S. at 318-19, 125 S.Ct. 2363 (explaining that "there must always be an assessment of any disruptive portent in exercising federal jurisdiction" in accepting "garden variety" state law claims). See also David L. Hanselman, Supreme Court Federal Removal Jurisdiction, For the Defense at 25, 65, September 2005 ("The most important consideration is whether removal would federalize a garden-variety tort, contract, or fraud claim, or whether there is some uniquely federal aspect of the case that, if removed, could be adjudicated in federal court without subjecting the federal courts to a flood of original filings or removals.").
The Supreme Court of the United States has underscored that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 813, 106 S.Ct. 3229. Indeed, the Supreme Court has "forcefully reiterated" that district courts must exercise "prudence and restraint" when determining whether a state cause of action presents a federal question because "determinations about federal jurisdiction require sensitive *842 judgments about congressional intent, judicial power, and the federal system." 478 U.S. at 810, 106 S.Ct. 3229 ; Morris v. City of Hobart, 39 F.3d 1105, 1111 (10th Cir. 1994).
Under the well-pleaded complaint rule, the federal question giving rise to jurisdiction must appear on the face of the complaint. See Karnes v. Boeing Co. , 335 F.3d 1189, 1192 (10th Cir. 2003). This rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). See Schmeling v. NORDAM, 97 F.3d 1336, 1339 (10th Cir. 1996).
Where a federal question appears on the face of a well-pleaded complaint, federal jurisdiction is not automatic. Federal jurisdiction requires not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum. See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg. , 545 U.S. 308, 313, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). The federal issue will qualify for a federal forum if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg. , 545 U.S. at 313-14, 125 S.Ct. 2363.
D. Law Regarding Diversity Jurisdiction
"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.' " Thompson v. Intel Corp. , No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *12 (D.N.M. Aug. 27, 2012) (Browning, J.)(citing 28 U.S.C. § 1332(a) ). As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute." McEntire v. Kmart Corp. , No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. Feb. 9, 2010) (Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68, 2 L.Ed. 435 (1806), overruled in part by Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) ; McPhail v. Deere & Co. , 529 F.3d 947, 951 (10th Cir. 2008) ). The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation." Valdez v. Metro. Prop. & Cas. Ins. Co. , 867 F.Supp.2d 1143, 1162-63 (D.N.M. 2012) (Browning, J.)(citing McPhail v. Deere & Co. , 529 F.3d at 956 ). The Court will discuss the two requirements in turn.
i. Diversity of Citizenship.
For diversity jurisdiction purposes, a person's domicile determines citizenship. See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983). "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit." McEntire v. Kmart Corp. , 2010 WL 553443, at *3 (citing Crowley v. Glaze, 710 F.2d at 678 ). See Freeport-McMoRan, Inc. v. KN Energy, Inc. , 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) ( "We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."). If neither a person's residence nor the location where the person has an intent to remain can be established, the *843 person's domicile is that of his or her parents at the time of the person's birth. See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952) ("[T]he law assigns to every child at its birth a domicile of origin. The domicile of origin which the law attributes to an individual is the domicile of his parents. It continues until another domicile is lawfully acquired."). Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship." McEntire v. Kmart Corp. , 2010 WL 553443, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994) ). A corporation, on the other hand, is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Gadlin v. Sybron Int'l Corp. , 222 F.3d 797, 799 (10th Cir. 2000) (quoting 28 U.S.C. § 1332(c)(1) ).
ii. Amount in Controversy.
The statutory amount-in-controversy requirement, which presently stands at $75,000.00, must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs aggregate their claims against a single defendant to exceed the threshold. Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *18 (D.N.M. Mar. 30, 2010) (Browning, J.). If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims. See Alberty v. W. Sur. Co. , 249 F.2d 537, 538 (10th Cir. 1957) ; Martinez v. Martinez, 2010 WL 1608884, at *18. Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct." Martin v. Franklin Capital Corp. , 251 F.3d 1284, 1292 (10th Cir. 2001) (Seymour, C.J.), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, --- U.S. ----, 135 S.Ct. 547, 190 L.Ed.2d 495 (2014). Multiple claims by the same plaintiff against the same defendant may be aggregated, even if the claims are entirely unrelated. See 14AA Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Vikram D. Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman, & Catherine T. Struve, Federal Practice and Procedure, Jurisdiction § 3704, at 566-95 (4th ed.2011). While the rules on aggregation sound complicated, they are not in practice: if a single plaintiff-regardless whether he or she is the only plaintiff who will share in the recovery-can recover over $75,000.00 from a single defendant-regardless whether the defendant has jointly liable co-defendants-then the court has original jurisdiction over the dispute between that plaintiff and that defendant. The court can then exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), meaning that they "derive from a common nucleus or operative fact," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).
Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. See McPhail v. Deere & Co. , 529 F.3d at 953. In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the *844 plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." McPhail v. Deere & Co. , 529 F.3d at 955. The United States Court of Appeals for the Tenth Circuit's decision in McPhail v. Deere & Co. has foreclosed such an option from a plaintiff who wishes to remain in state court. McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play." 529 F.3d at 955.
E. The Court Does Not Have Federal Question Jurisdiction
It is apparent that no federal law appears on the face of Plaintiffs' Complaint. As noted above, Plaintiffs' Complaint asserts three causes of action: (1) breach of contract; (2) promissory estoppel; and (3) negligent misrepresentation.[1] Although difficult to parse which facts are alleged to support the various causes of action, these appear to be "garden variety" state law causes of action. Given that Plaintiffs' is asserting state law claims, the Court further notes that there is no basis to conclude that Plaintiffs' claims "necessarily turn on a substantial question of federal law.' " Nicodemus v. Union Pac. Corp. , 318 F.3d 1231, 1235 (10th Cir. 2003) (quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 808, 106 S.Ct. 3229 ). For instance, the contract underlying Plaintiffs' breach of contract claim provides that California law would apply to all disputes arising under the contract. Doc. 1-1 at 24. Further, even giving Plaintiffs the benefit of the doubt, the Court is unable to conceive of a situation in which either the promissory estoppel or negligent misrepresentation claims would implicate substantial questions of federal law. Accordingly, I recommend concluding that there is no basis for the Court to exercise federal question jurisdiction.
F. The Court Does Not Have Diversity Jurisdiction
As noted above, Plaintiffs are New Mexico citizens for purposes of diversity jurisdiction and at least one Defendant, Defendant Dill, is also a New Mexico citizen. Accordingly, the requirement of complete diversity is not present in this case. See Ravenswood Inv. Co., L.P. v. Avalon Correctional Services , 651 F.3d 1219, 1233 (10th Cir. 2011) ("When diversity is premised on diversity of citizenship under 28 U.S.C. § 1332(a)...each plaintiff must be diverse from each defendant to have what is known as complete diversity."). Because there is not complete diversity, I recommend concluding that the Court cannot exercise diversity jurisdiction over this suit.
For the above stated reasons, I recommend concluding that the Court does not have subject matter jurisdiction over Plaintiffs' Complaint. Given this lack of jurisdiction, the Court concludes that it is unnecessary to consider Defendants' remaining arguments as to why Plaintiffs' claims should be dismissed. See Gerald v. Locksley , 785 F.Supp.2d 1074, 1109 n.4 (D.N.M. 2011) (noting that where the court lacks subject matter jurisdiction, it is improper *845 to make further rulings regarding those defendants).
G. Defendant Dill's Motion for Sanctions
Defendant Dill contends that sanctions should be entered against Plaintiffs because following Chief Judge Johnson's previous decision dismissing Plaintiffs' Complaint, Plaintiffs were on notice that the trustee of the estate is entitled to quasi-judicial immunity and that they must receive permission in the bankruptcy proceeding to sue the trustee.[2] See Duran v. Dill , Civ. No. 16-928, 2016 WL 9818317, Doc. 6 at 5-7 (D.N.M. Nov. 16, 2016).
Courts have the inherent power to levy sanctions in response to abusive litigation practices. See Chambers v. NASCO, Inc. , 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ; Roadway Express, Inc. v. Piper, 447 U.S. 752, 756, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). This Court has the inherent power to impose a variety of sanctions on litigants to regulate its docket, promote judicial efficiency, and deter frivolous filings. See ADS Fin. Servs. v. United States, No. COV. 95-1469, 1997 WL 382110, *1 (D.N.M. Mar. 26, 1997) (unpublished decision)(Hansen, J.)(citing Martinez v. Internal Revenue Service, 744 F.2d 71, 73 (10th Cir. 1984) ). Because the exercise of the court's inherent power is not governed by rule or statute, see Chambers v. NASCO, Inc. , 501 U.S. at 43, 111 S.Ct. 2123, the power "must be exercised with restraint and discretion," Roadway Express v. Piper, 447 U.S. at 764, 100 S.Ct. 2455. As the United States Court of Appeals for the Tenth Circuit has explained:
When deciding to impose sanctions on an abusive litigant the court must balance two competing interests: (1) the litigant's constitutional right of access to the courts, see Bounds [v. Smith], 430 U.S. [817,] 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 [ (1977) ] ; and (2) the court's inherent power to regulate its docket, see Link v. Wabash R.R. , 370 U.S. 626, 629-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) ; see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).
Green v. Price, 76 F.3d 392, 1996 WL 56075, *2 (10th Cir. 1996) (unpublished decision).
The right of access to the courts is not absolute or unconditional; a plaintiff has no constitutional right to bring frivolous or malicious lawsuits. See Depineda v. Hemphill, 34 F.3d 946, 948 (10th Cir. 1994) ("Plaintiff has no absolute, unconditional right of access to the courts and no constitutional right of access to prosecute frivolous or malicious actions.")(citing Winslow v. Hunter, 17 F.3d 314, 315 (10th Cir. 1994) ); Tripati v. Beaman, 878 F.2d 351, 353 (10th Cir. 1989). Although "[l]itigiousness alone will not support an injunction restricting filing abilities[,] ... injunctions are proper where the litigant's abusive and lengthy history is properly set forth." Id. If a plaintiff has a lengthy history of repetitive filings and abuse of the judicial process, a court may, in its discretion, impose sanctions on future filings of a litigant under its "inherent power to enter orders necessary and appropriate in aid of our jurisdiction." Depineda v. Hemphill, 34 F.3d at 948 (imposing sua sponte sanctions on a criminal defendant who filed eleven pro se appeals in approximately six years)("Based on plaintiff's history of repetitive filings and abuse of the judicial process, we have sua sponte chosen to impose appellate *846 sanctions on plaintiff's future filings in this court 'commensurate with our inherent power to enter orders "necessary or appropriate" in aid of our jurisdiction' under 28 U.S.C. § 1651(a).")(quoting Winslow v. Hunter, 17 F.3d at 314-15 ). A court may impose reasonable filing restrictions on a plaintiff so long as the court publishes guidelines on how the plaintiff may file a subsequent action and provides the plaintiff an opportunity to respond to the protective order. Id. (citing Tripati v. Beaman, 878 F.2d at 354 ).
The Court understands Defendant Dill's frustrations. This is the second time Plaintiffs have filed a lawsuit against him in his capacity as trustee in response to their displeasure with developments in the bankruptcy proceedings. Indeed, Plaintiffs are, in effect, utilizing these lawsuits as de facto appeals of adverse determinations in the bankruptcy proceedings. For instance, in the previous lawsuit before Chief Judge Johnson, Plaintiffs were unhappy with the appointment of Defendant Dill and therefore filed claims challenging his impartiality in an effort to have him removed as trustee. Duran v. Dill , Civ. No. 16-928, Doc. 6. Their claims were, of course, the same objections Plaintiffs advanced against his appointment in the bankruptcy proceedings. After Chief Judge Johnson dismissed Plaintiffs' first lawsuit against Defendant Dill on the basis that, as trustee, Defendant Dill is entitled to quasi-judicial immunity and Plaintiffs failed to obtain permission in bankruptcy court to sue him, Plaintiffs are again attempting to sue him. Plaintiffs' present suit is founded on Plaintiffs' objections in the bankruptcy proceedings to the sale of the bowling equipment. Bank. Proc., Doc. 629 at 7-8. When Judge Thuma denied those objections, Plaintiffs immediately filed the present lawsuit without regard for Chief Judge Johnson's previous ruling. Given this, Plaintiffs' actions are frivolous at best and abusive at worst.
The posture of this case is similar to that in Clark v. Meijer , 376 F.Supp.2d 1077 (D.N.M. 2004). In Clark , the court entered filing restrictions on the plaintiffs' future attempts to sue the defendants. The plaintiffs had a long history of filing lawsuits against the defendants but the most relevant facts for purposes of the court's award of sanctions was that the plaintiffs initiated a second suit in New Mexico against the defendants after their first suit was dismissed for lack of personal jurisdiction. Id. at 1086. The court concluded that "[t]he filing of this suit after a court within this district already determined the issue of personal jurisdiction indicates the [plaintiffs'] willingness to abuse the Court's judicial process in hopes of achieving a personal pecuniary benefit." Id. The court therefore imposed filing restrictions on the plaintiffs and granted defendants their reasonable attorneys' fees and other expenses in preparing their motion to dismiss. Id. at 1087.
In an effort to deter future misconduct, I recommend that filing restrictions be placed on Plaintiffs to prevent future frivolous lawsuits against Defendant Dill. As noted above, Chief Judge Johnson's previous dismissal of Plaintiffs' prior lawsuit against Defendant Dill concluded that Defendant Dill, in his capacity as bankruptcy trustee, is immune from suit. Duran v. Dill , Civ. No. 16-928, Doc. 6 at 5-6. Second, Chief Judge Johnson dismissed that lawsuit because Plaintiffs did not obtain permission in bankruptcy court to sue Defendant Dill pursuant to the Barton doctrine. See id. at 6 (citing Satterfield v. Malloy , 700 F.3d 1231, 1234 (10th Cir. 2012) ). I therefore recommend that as a precondition to filing future lawsuits Plaintiffs be required to (1) file a petition with the Clerk of Court requesting leave to file *847 a pro se proceeding against Defendant Dill, (2) plaintiffs file with Clerk of Court a notarized affidavit setting out the basis of the causes of action they intend to pursue against Defendant Dill and specifically why the intended causes of action are not directed toward Defendant Dill in his capacity as the bankruptcy trustee, or (3) that they have received permission in bankruptcy court to bring suit against Defendant Dill. I further recommend that Defendant Dill be granted reasonable attorneys' fees and other expenses in connection with the preparation of his motion to dismiss.
III. CONCLUSION
For the above stated reasons, I recommend that:
• Defendant Craig Dill's Amended Motion to Dismiss for Failure to State a Claim, Lack of Jurisdiction, and Motion for Sanctions (Doc. 11) be GRANTED and that sanctions consistent with those outlined above be entered against Plaintiffs;
• Defendants David Frewing and U.S. Bowling's Amended Motion to Dismiss, or in the alternative, Motion to Stay Proceedings be GRANTED.
Because I recommend that these Motions be granted, I ultimately recommend that Plaintiffs' Complaint be dismissed with prejudice.

28 U.S.C. §§ 631 -39.

Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:
In this Circuit, unpublished orders are not binding precedent, ... and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.
United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005) (citations omitted). The Court concludes that Pevehouse v. Scibana has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Plaintiffs also appears to assert a cause of action for punitive damages. Doc. 1. However, "punitive damages are not a stand-alone claim" and should not be set out as a separate cause of action. Gerald v. Locksley , 785 F.Supp.2d 1074, 1145 (D.N.M. 2011). The Court accordingly does not consider the punitive damages claim as a viable cause of action for purposes of its analysis.

Defendants U.S. Bowling and Frewing did not move for sanctions against Plaintiffs and I therefore limit consideration of sanctions to Defendant Dill's request.